## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *In Re* Application of )<br><br>THE ATTORNEY GENERAL OF )<br>THE BRITISH VIRGIN ISLANDS )<br><br>*Applicant* )<br><br>for Judicial Assistance to Obtain Evidence )<br>for Use in a Foreign Proceeding Pursuant )<br>to 28 U.S.C. § 1782 ) | Misc. Case No. _____ |

## APPLICATION FOR JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

The Attorney General of the British Virgin Islands (the "Attorney General") respectfully submits this Application for Judicial Assistance to Obtain Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 to seek leave to take discovery from Pauline E. Jones, a resident in this District, to obtain documentary and testimony evidence for use in proceedings that have been commenced in the British Virgin Islands ("BVI") as described further, infra.

## INTRODUCTION

1. The relevant facts to this Application are summarized below and set forth more fully in the Declaration of Andrew R. Gilliland (the "ARG-1 Declaration") and accompanying exhibit thereto ("Exhibit ARG-1"). The facts stated in the ARG-1 Declaration are incorporated herein by reference.

2. The Attorney General respectfully seeks the judicial assistance of this Court to obtain certain documentary and testimonial evidence in connection with civil proceedings brought before the Eastern Caribbean Supreme Court at the BVI ("BVI High Court") against

1

Lester S. Hyman (the "BVI Proceeding"). <u>Att'y Gen of the Virgin Is. v. Hyman</u>, No. BVIHCOM2021/0005 (Virgin Is. <u>filed</u> Jan. 19, 2021); ARG-1 Decl. ¶ 14. Mr. Hyman is a now-suspended member of the District of Columbia and Massachusetts Bars, <u>Id.</u> ¶ 13, who represented the BVI Government ("BVIG") in an attorney-client capacity from 1987 to July 30, 2017, as of which date the BVIG terminated Mr. Hyman due to it becoming aware of facts, upon which the BVIG brought the BVI Proceeding, <u>Id.</u> ¶ 6. For the reasons set forth in the ARG-1 Declaration and summarized below, the Attorney General has brought a civil action in the BVI against Mr. Hyman for fraud and deceit and breaches of trust and loyalty and of his contractual obligations owed to the BVIG. <u>Id.</u> ¶ 17. This Application is intended to obtain evidence in support of the Attorney General in the BVI Proceeding against Mr. Hyman and an intended expansion by the naming of certain additional defendants (described below). <u>Id.</u> ¶ 21.

3.  "As of December 7, 2015, the BVIG entered into a Framework Agreement with BV Airways Inc. (incorporated in the BVI) ('BV Airways'),[1] Castleton Holdings LLC (formed in the District of Columbia) ('Castleton'), and Colchester Aviation LLC (formed in Delaware) ('Colchester') (collectively, the 'Operator Parties')." <u>Id.</u> ¶ 5. "From November 9, 2011, to February 26, 2019, which includes all material times, the BVIG was led by the then-Premier D. Orlando Smith. Pursuant to the Framework Agreement, the Operator Parties agreed to provide a direct nonstop airline service between the Terrence B. Lettsome International Airport in the BVI and Miami in return for the BVIG's financial and practical support [the "Airline Project"]. Regrettably, and despite the BVIG providing such support including financial support amounting to $7.2 million, the airline never operated a single commercial flight. Notwithstanding the BVIG's

---

[1] BV Airways was incorporated in the BVI on August 24, 2009, and was struck off register on May 1, 2019, for non-payment of fees. <u>Id</u> ¶ 5.

financial investment and assistance, the Airline Project failed, and the BVIG terminated the Framework Agreement in October 2017." Id.

4.      It is the Attorney General's case that unbeknownst to the BVIG at the time, and at all material times before and during the operation of the Framework Agreement, the BVIG's own attorney, Mr. Hyman, was colluding with certain individuals affiliated with the Operator Parties to assist them to obtain the BVIG's acquiescence to the Framework Agreement and the BVIG's $7.2 million investment in the Airline Project.  "In breach of his fiduciary duties of trust and loyalty owed to the BVIG as its retained attorney, for which the BVIG paid a $100,000 annual retainer, Mr. Hyman received secret payments from BV Airways in the form of kickbacks and/or bribes amounting to $117,500 plus a promise to be paid a further $100,000 and "forgiving" a further $3,500 and stock options in BV Airways."[2] Id. ¶ 6 (citation omitted).

5.       As more fully set out in the Declaration, the Attorney General's allegations are supported by documents obtained during the course of the Attorney General's investigations, including documents provided to the Attorney General in response to a subpoena served on Mr. Hyman pursuant to a May 23, 2020, Order of Judge Royce C. Lamberth sitting in the United States District Court for the District of Columbia.  Att'y Gen. of the Virgin Is. v. Hyman (In re Att'y Gen. of the Virgin Is.), No. 19-mc-164, 2020 WL 2615519 (D.D.C. May 23, 2020).

6.      The individuals affiliated with the Operator Parties with whom Mr. Hyman colluded are:

---

[2] "Unbeknownst to the BVIG at the time, Mr. Hyman (1) was paid $100,000 of a promised $200,000 'finder's fee'; (2) received $5,000 of an $8,500 invoice for purported legal services on behalf of BV Airways in a matter where the BVI Airports Authority ('BVIAA'), an instrumentality of his client the BVIG, was adverse to BV Airways; and (3) was paid $10,000 and received stock options upon becoming a paid director of BV Airways and received an additional $2,500 for his attendance at the sole board meeting." Id. ¶ 6, n.2 (citations omitted).

    a.   Scott A. Weisman: a U.S. citizen and director, chairman, and ostensible 8.1% beneficial owner of BV Airways and an owner and controlling mind of Colchester, which ostensibly owns 49% of BV Airways;

    b.   Jerry D. Willoughby: a U.S. citizen and former director, president, CEO, and ostensible 8.1% beneficial owner of BV Airways and an owner and controlling mind of Colchester; and

    c.   Bruce F. Bradley: a U.S. citizen and director and vice chairman of BV Airways who is also the owner and controlling mind of Castleton.  ARG-1 Decl. ¶ 19.

7.    Together, Messrs. Weisman, Willoughby, and Bradley (the "BVI Additional Defendants") were the three principals behind the Airline Project.  Id. ¶ 20.  In addition, Scott DeLacy was at all material times the Chief Operating Officer of BV Airways.  Id.

8.     For the reasons set forth in the Declaration, and subject to the results of ongoing investigations (including this Application and the Attorney General's parallel § 1782 application before the U.S. District Court for the Southern District of New York), the Applicant intends to add the BVI Additional Defendants to the BVI Proceeding on the grounds of, inter alia:

    a.   "fraud and deceit, bribery, inducement of breach, breach of contract/fiduciary duty, and/or unlawful means conspiracy;
    b.   intentionally inducing (without justification) the Operator Parties' breach of contract by wrongly diverting and misappropriating the BVIG's $7.2 million of invested funds; and
    c.   dishonest assistance in the breaches of fiduciary duty owed to the BVIG by Mr. Hyman."  Id. ¶ 21.

9.    Legal professional ethics rules and case law in the BVI require heightened pleading standards when alleging fraud or dishonesty that must be not only particularized but also supported by cogent evidence.  Pleadings failing to comply are liable to be struck as an abuse of process.  Id. ¶ 22-24.  Furthermore, due to the gravity of the allegations, the Attorney General is seeking that

4

investigations and discovery be done diligently to ensure the accuracy of any amendments it makes to her founding pleading in the BVI Proceeding.

10. One of the facts requiring further investigation prior to making such amendments and proceeding to add the BVI Additional Defendants to the BVI Proceeding is to establish whether Ms. Jones is a genuine beneficial owner of 31% of the shares of BV Airways (the "Jones Shares"). Id. ¶ 25.

11. It appears that at all material times, Ms. Jones was both a director and Executive Vice President of BV Airways and is recorded as such in an application for a Foreign Air Carrier Permit and Exemption[3] filed by BV Airways with the Department of Transportation ("DoT") on February 27, 2017 (the "DoT Application"). Dep't of Transp., Docket No. OST-2017-0032-0001 (Feb. 27, 2017); ARG-1 Decl. ¶ 26. The DoT Application was to secure the necessary DoT permit and exemption for BV Airways to operate service as a foreign air carrier between the BVI and the United States and have a foreign regulator be primarily responsible for oversight rather than the Federal Aviation Administration. In evaluating an application for a Foreign Air Carrier Permit and Exemption, the DoT considers, inter alia, an airline's ownership to determine whether the airline qualifies as a "foreign air carrier." Id. ¶ 27; see 49 U.S.C. § 40102(21). Accordingly, BV Airways stated in the DoT Application that BV Airways was owned by shareholders Ms. Jones, a UK citizen (31%); Bradley D. Goggin,[4] a UK citizen (20%); and Colchester (49%). Id., ¶ 26.

12. Colchester, which is a Delaware limited liability company, ¶ 3, supra, is beneficially owned Messrs. Weisman and Willoughby among other U.S. citizens. Messrs.

---

[3] Made pursuant to 49 U.S.C. §§ 40109 and 41301 and Part 211 of the Department of Transportation's Economic Regulations.
[4] Mr. Goggin was employed by BV Airways as chief pilot and director of flight operations. Mr. Goggin now resides in the United Kingdom.

Weisman and Willoughby were also directors of both BV Airways and Colchester, and Mr. Willoughby was both president and chief executive officer of BV Airways.  Id. ¶ 28.

13.     It is the Applicant's case that the representations made by BV Airways in the DoT Application did not reflect the true ownership of BV Airways and were made by or on behalf of the BVI Additional Defendants to ensure that the DoT Application for a Foreign Air Carrier Permit and Exemption was approved.  This belief is supported by the following facts:

a.  neither Ms. Jones nor Mr. Goggin made a capital contribution to BV Airways; the only capital injection into BV Airways comprised of a $10,000 deposit by Colchester in February 2016, Id. ¶ 30;

b.  Ms. Jones and Mr. Goggin acquired their respective interests in BV Airways on February 13, 2017, merely 14 days prior to BV Airways submitting the DoT Application, Id.;

c.  Ms. Jones and Mr. Goggin were only issued Class II shares whereas Colchester (beneficially owned by Messrs. Weisman and Willoughby and other U.S. citizens) were issued with Class I shares; Class II shares were restricted as they conferred (a) "no right to the payment of any dividends . . . except as expressly approved by resolution of the Board of Directors at the time any such dividends are declared," Ex. ARG-1, at 326, and (b) "no right to share in the distribution of surplus assets for any reason whatsoever, including, without limitation, upon any liquidation, dissolution, or winding up of the Company, or any other similar economic rights.," Id.; and

d.  "BV Airways amended and restated its Memorandum and Articles of Association so as to be authorized to issue Class II shares just three days before

6

issuing them to Ms. Jones and Mr. Goggin (and just seventeen days prior to filing the Foreign Air Carrier Permit and Exemption application)," ARG-1 Decl. ¶ 30.

14.    It is the Attorney General's case that the true underlying owners of 100% of the shares of BV Airways are Messrs. Weisman and Willoughby.  See, Id. ¶ 31.

15.    The facts set out above and relating to the ownership structure of BV Airways are of importance to a fully pleaded case in the BVI as it is essential to identify and confirm (a) the true beneficial owners of BV Airways and therefore the correct parties to be added to the BVI Proceeding and (b) the Attorney General's belief that the BVI Additional Defendants each worked together and with others to obtain a Foreign Air Carrier Permit and Exemption on an inaccurate factual predicate and material misstatements, which, if true, visited harm on the BVIG on the basis that $7.2 million of public money was invested into the Airline Project that was founded upon two regulatory approvals (from the U.S. and the BVI) that appear to have been procured on the basis of an inaccurate or incomplete factual picture and/or material misstatements.  Id. ¶ 32.

16.    In light of the foregoing, the authority granted to this Court by § 1782, and the required pleading standards so that she may amend her claim in the BVI Proceedings and add the BVI Additional Defendants, the Attorney General respectfully requests that the Court exercise its discretion to grant the Applicant's request to conduct discovery on Ms. Jones compelling her to produce documents and appear for a deposition in this District, as further detailed in paragraphs 36-37, infra.

## **MEMORANDUM OF AUTHORITIES**

### I.    **OVERVIEW OF 28 U.S.C. § 1782 AND THE STATUTORY THRESHOLD FOR GRANTING RELIEF**

17.    "Section 1782 is the product of congressional efforts, over the span of nearly 150

years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel

Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  Section 1782 "provide[s] for

assistance in obtaining documentary and other tangible evidence as well as testimony." Id. at 248.

The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation.  The order may be made
> pursuant to a letter rogatory issued, or request made, by a foreign or international
> tribunal or upon the application of any interested person and may direct that the
> testimony or statement be given, or the document or other thing be produced, before
> a person appointed by the court.  By virtue of his appointment, the person appointed
> has power to administer any necessary oath and take the testimony or statement.
> The order may prescribe the practice and procedure, which may be in whole or part
> the practice and procedure of the foreign country or the international tribunal, for
> taking the testimony or statement or producing the document or other thing.  To the
> extent that the order does not prescribe otherwise, the testimony or statement shall
> be taken, and the document or other thing produced, in accordance with the Federal
> Rules of Civil Procedure.  A person may not be compelled to give his testimony or
> statement or to produce a document or other thing in violation of any legally
> applicable privilege.

28 U.S.C.A. § 1782(a)

18.    Put succinctly, in order for the Court to be authorized to grant judicial assistance in

the form of an order for discovery pursuant to § 1782, the statute sets a mandatory threshold that

(1) a person, from whom evidence is sought, reside or be found in the District of this Court; (2)

the evidence be for use in a foreign proceeding; and (3) the request be pursuant to a foreign tribunal

request or upon application of an interested party.[5]

---

[5] District courts may, and typically do, grant § 1782 relief on an ex parte basis.  See In re Societe de Etude de
Realisation et d'Explotation pour le Traitement du Mais, No. 13-mc-0266, 2013 WL 6164435, at *2 n.1 (E.D. Pa.
Nov. 22, 2013) ("The main issue that Intel does not touch upon is the proprietary of the district court's proceeding on
an ex parte basis.  Any fair interpretation of § 1782(a)'s plain language, however, especially when made in conjunction
with the purposes of the statute as discussed by the Supreme Court in Intel, should be read to encompass ex parte
proceedings.  In particular, the statute provides, 'The order may prescribe the practice and procedure, which may be
in whole or part the practice and procedure of the foreign country or international tribunal, for taking the testimony or

## II.    **DISCRETIONARY FACTORS**

19.     Once the statutory requirements set forth in § 1782 are met, the Court is free to exercise its broad discretion to grant relief. The Court's discretion is guided by the discretionary factors recited by the U.S. Supreme Court in <u>Intel</u>:

(1)     whether "the person from whom discovery is sought is a participant in the foreign proceeding," <u>Intel</u>, 542 U.S. at 264, because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach," <u>Id.</u>, and therefore their evidence may be "unobtainable absent § 1782(a) aid," <u>Id.</u>;

(2)     "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, the court, or agency abroad to federal-court judicial assistance," <u>Id.</u>;

(3)     "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States," <u>Id.</u>, at 264-65; and

---

statement or producing the document or other thing.' 28 U.S.C. § 1782. And even if this language is not operative, there is no reason to suspect that proceeding on an ex parte basis is improper, because GMX will have an opportunity to move to quash should it so desire. <u>See</u>, <u>e.g.</u>, <u>Gushlak v. Gushlak</u>, 486 F. App'x 215, 217 (2d Cir. 2012) ('[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 <u>ex parte</u>. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3).'); <u>In re Tokyo Dist.</u>, 539 F.2d 1216, 1219 (9th Cir. 1976) ('Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte. The witnesses can and have raised objections and exercised their due process rights by motions to quash the subpoenas.'); <u>In re Nokia Corp.</u>, No. 13-mc-80217, 2013 WL 6073457, at *2 (N.D. Cal. Nov. 8, 2013) ('It is common for parties to request and obtain orders authorizing discovery ex parte.'); <u>In re Sup. Ct. of H.K.</u>, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ('[S]uch <u>ex parte</u> applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.')

Moreover, a survey of <u>Intel</u>'s citing references reveals that the use of ex parte applications is widespread and, in many cases, unremarked upon (and thus approved of <u>sub silentio</u>). <u>See</u>, <u>e.g.</u>, <u>Moloney v. United States</u> (<u>In re</u> United Kingdom), 685 F.3d 1, 6 (1st Cir. 2012), <u>cert. denied</u>, 569 U.S. 942 (2013); <u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 78 (2d Cir. 2012); <u>Jet Air Serv. Equador S.A. v. Consorcio Ecuatoriano de Telecomunicaciones S.A. (In re Consorcio Ecuatoriano de Telecomunicaciones S.A.)</u>, 685 F.3d 987, 992 (11th Cir. 2012); <u>In re Clerici</u>, 481 F.3d 1324, 1329 (11th Cir. 2007).

(4)     whether the § 1782(a) request is "unduly intrusive or burdensome," <u>Id.</u>, at 265.

This discretion is further informed by the twin Congressional aims of § 1782 of "providing efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." <u>In re</u> Biomet Orthopaedics Switz. GmbH, 742 Fed. App'x 690, 696 (3d Cir. 2018) (quoting <u>Intel</u>, 542 U.S. at 252).

<b><u>ARGUMENT</u></b>

**I.     <u>THIS APPLICATION MEETS THE STATUTORY THRESHOLD AUTHORIZING THIS COURT TO GRANT RELIEF</u>**

20.     As set forth below, this Application meets the statutory requirements authorizing this Court to grant relief pursuant to § 1782.

**A.     <u>The Party from whom Discovery is Sought Resides or Is Found in this District</u>**

21.     Ms. Jones resides at 841 Andover Rd., Lansdale, PA 19446.  ARG-1 Decl. ¶ 2.

**B.     <u>The Evidence Sought is for Use in a Foreign Proceeding</u>**

22.     The Applicant seeks discovery in support of the ongoing BVI Proceeding against Mr. Hyman and the Attorney General's intended expansion of the BVI Proceeding by the naming of the BVI Additional Defendants.  <u>Id.</u> ¶ 14.  The BVI Proceeding is before the BVI High Court, the BVI's first instance trial court of unlimited jurisdiction and a foreign tribunal within the meaning of § 1782.  <u>Att'y Gen. of the Virgin Is. v. Hyman</u>, No. 19-mc-164-RCL, 2020 WL 2615519, at *5 (D.D.C. May 23, 2020) ("The BVI High Court is clearly a foreign tribunal within the meaning of Section 1782.  <u>See</u>, <u>e.g.</u>, <u>In re</u> Ming Yang, No. 19-mc-80207-LB, 2019 U.S. Dist. LEXIS 146853, at *1-3 (N.D. Cal. Aug. 28, 2019) (granting an application under Section 1782 for evidence to be used in a proceeding before the BVI High Court)").

10

C.      **The Applicant Is an Interested Party**

23.     The third statutory requirement for § 1782 assistance is that either the request come from a foreign tribunal request or is made by an interested party.  In the instant case, the Attorney General is the claimant (plaintiff) in the BVI Proceeding and seeks to expand its claim to include the BVI Additional Defendants and/or any other additional parties identified, against whom it shall seek to obtain monetary damages.  The Applicant is therefore an interested party for these purposes as was accepted by Judge Lamberth in the Attorney General's § 1782 application before the United States District Court for the District of Columbia.  Att'y Gen. of the Virgin Is., 2020 WL 2615519, at *6.

## II.      THE COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF GRANTING RELIEF

24.     As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant assistance, including leave for discovery, in its discretion.

A.      **First *Intel* Factor: Whether Persons from whom Discovery Is Sought Are Participants in the Foreign Proceedings**

25.     Ms. Jones is not a party to the BVI Proceeding.  Furthermore, based upon the assumption that Ms. Jones is not the true underlying beneficial owner of the Jones Shares, Mr. Gilliland confirms that it is not presently the Attorney General's intention to add Ms. Jones as a defendant to the BVI Proceeding.  ARG-1 Decl. ¶ 38.  Ms. Jones will therefore likely remain outside the jurisdictional reach of the BVI High Court, and the first Intel factor weighs in favor of granting the relief sought in this Application.

**B.    Second *Intel* Factor: The Nature of the Foreign Tribunal and whether the Foreign Court Is Receptive to U.S. Federal Court Assistance**

26.    As noted in paragraph 22, <u>supra</u>, the BVI High Court is the first instance court of unlimited jurisdiction in the BVI, and other U.S. district courts have implicitly recognized the BVI High Court as a foreign tribunal for § 1782 purposes by having granted relief for use in proceedings before the BVI High Court.

27.    The BVI is receptive to U.S. federal court assistance.  Where a lacuna in BVI common law exists, the common law of England is extended to the BVI.  Common Law (Declaration of Application) Act, 1705, 3 & 4 Ann., c. 13, § 72, Rev. L. Virgin Is. (1991).  The leading authority in English law regarding the admissibility of foreign evidence is <u>S.C. Ins. Co. v. Assurantie Maatschappij "de Zeven Provincien" N.V.</u>, [1987] A.C. 24 (H.L.) (appeal taken from Eng.).  In <u>S.C. Ins.</u>, the House of Lords addressed a case where a party had sought and obtained pre-trial § 1782 assistance and found that such assistance does not interfere with the English court's control of proceedings, and evidence procured through § 1782 assistance is admissible. "Under the civil procedure of the High Court the court does not, in general, exercise any control over the manner in which a party obtains the evidence which he needs to support his case." <u>S.C. Ins.</u>, [1987] A.C. at 41.  "[T]he basic principle underlying the preparation and presentation of a party's case in the High Court in England is that it is for that party to obtain and present the evidence which he needs by his own means, provided always that such means are lawful in the country in which they are used." <u>Id.</u>, at 42.

28.    The BVI High Court has implicitly recognized the admissibility of evidence procured with the assistance of § 1782.  In a BVI High Court (Commercial Division) judgment criticizing, <u>inter alia</u>, "the defendants' disclosure," <u>Comodo Holdings Ltd. v. Renaissance Ventures Ltd.</u>, [2013] BVIHC (Com) 0045/2013 ¶ 271, "[t]he defendants also seem to have

opposed, for no very good reason, an application made in the United States by [plaintiff] under 23 [sic] USC § 1782 for the production of documents," Id.

29.     Furthermore, in this particular case, the BVI High Court is aware of the Attorney General's intention to file this Application with this Court, ARG-1 Decl. ¶ 14, 40, and Mr. Gilliland states, "To the extent that this Application is successful, I confirm that any responsive documents or information disclosed pursuant to this Application will be admissible in the BVI High Court as evidence of the wrongdoings, of which the Attorney General now complains," Id. ¶ 40.

30.     Additionally, accomplishing the second of the twin Congressional aims "of encouraging foreign countries by example to provide similar assistance to our courts," Intel, 542 U.S. at 251 (internal citation omitted), the BVI has legislation like § 1782 in the form of the Evidence (Proceedings in Foreign Jurisdictions) Ordinance.  Features of this legislation authorize the BVI High Court, upon application, to compel "(a) the examination of witness, either orally or in writing; (b) the production of documents; (c) the inspection, photographing, preservation, custody or detention of any property; or (d) the medical examination of any person," Evidence (Proceedings in Foreign Jurisdictions) Ordinance, 1988, c. 24, § 4(2), Rev. L. Virgin Is. (1991), in relation to foreign civil proceedings "that have been instituted," Id. § 3(1)(b)(i), or "the institution of which before that court is contemplated," Id. § 3(1)(b)(ii).  In short, the BVI High Court is well-versed in and amenable to foreign evidence gathering of the kind sought in this Application.

31.     Given that the BVI High Court accepts the admissibility of evidence procured through § 1782 generally, the BVI High Court is expressly aware of the Attorney General's intention to file this Application specifically in connection with the BVI Proceeding, and the BVI's similar legislation of providing assistance to litigants in foreign (non-BVI) proceedings (thereby

accomplishing Congress' reciprocal twin aim of § 1782), the second <u>Intel</u> factor weighs in favor of granting the relief sought by the Attorney General in this Application.

C.     **Third *Intel* Factor: Whether this Application Conceals an Attempt to Circumvent Foreign Proof-gathering Restrictions or Other Policies of the Foreign Country or the United States**

32.     This Application does not conceal an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country or the United States. On the contrary, as noted in paragraphs 26-27, <u>supra</u>, the BVI High Court, in fact, welcomes parties to engage in § 1782 discovery and adopts the English view that litigants control how they gather evidence and may use any lawful means to do so. Specific to this Application, the BVI High Court is aware of the this intended Application. ¶ 28, <u>supra</u>. Additionally, the BVI, with legislation akin to § 1782, has no policy objections to admitting evidence procured through similar legislation elsewhere. ¶ 29, <u>supra</u>. However, the BVI High Court does not exercise jurisdiction over any of the U.S. documents and Ms. Jones and defers to U.S. courts to exercise jurisdiction over documents and parties within their territory.

33.     With respect to U.S. policy considerations, the two Congressional aims of assisting foreign litigants and encouraging foreign courts to provide similar assistance to U.S. litigants are met. The Applicant is a foreign litigant of the type that § 1782 is intended to benefit, and the BVI is a jurisdiction that has promulgated similar legislation to assist a similarly placed U.S. litigant. Furthermore, the documentation and testimony sought do not violate U.S. law, practice, or policy concerns; they would be discoverable if the litigation was before U.S. courts. In short, the third <u>Intel</u> factor weighs in favor of granting this § 1782 request.

**D.    Fourth _Intel_ Factor: Whether this Application is Overly Burdensome or Intrusive**

34.    The request for testimony and documentation is framed narrowly and relates directly to Ms. Jones' association with BV Airways and the other Operating Parties.  As an Executive Vice President, director and, allegedly, a 31% shareholder of BV Airways, it is likely that Ms. Jones has in her possession, custody, and/or control, and/or otherwise has easy access to the documents and information requested.  "The BVI Business Companies Act, 2004 requires that BVI companies maintain certain records and underlying documentation for a period of <u>at least</u> five years from the date (a) of completion of the transaction to which the records and underlying documentation relate or (b) the company terminates the business relationship to which the records and underlying documentation relate, Virgin Is. Bus. Cos. Act, § 98(1)(b) and that a company's director is entitled to request and inspect such records without charge, Virgin Is. Bus. Cos. Act, § 100(1)."  ARG-1 Decl. ¶ 35.

35.    As Ms. Jones is apparently reluctant to assist the Attorney General with her inquiries, <u>see</u> ARG-1 Decl. ¶ 33, in the spirit of judicial economy, the Attorney General respectfully requests to obtain her testimony under oath by way of a deposition in this District for the convenience of the deponent in addition to the document requests.  Additionally, given the current situation regarding covid-19, the Attorney General seeks this Court's authorization to conduct any deposition by remote means.  Because the discovery sought is confined solely to information and documents concerning Ms. Jones' association with BV Airways, all of which Ms. Jones is likely to have in her possession, custody, and/or control and/or have easy access to, it cannot be said that such a request is burdensome or intrusive, and the fourth <u>Intel</u> factor weighs in favor of granting the relief sought in this Application.

## CONCLUSION

36.     The Applicant respectfully submits to the Court that the § 1782 statutory threshold authorizing this Court to grant § 1782 assistance has been met and that the discretionary factors weigh in favor of granting an order for the relief sought herein.  See ¶¶ 37-38, infra.

## RELIEF SOUGHT

37.     The Attorney General respectfully seeks the judicial assistance of this Court for an order to grant the Attorney General leave to serve subpoenas duces tecum, compelling Ms. Jones to produce:

      a.  all payment records of contributed capital or monies paid in exchange for the Jones Shares;

      b.  any subscription agreement(s) and or promissory notes issued to facilitate the acquisition/transfer of the Jones Shares;

      c.  any employment contract and/or agreement entered into between any of the Operator Parties (or their affiliates) on the one side and Ms. Jones or any corporate entity affiliated with her on the other;

      d.  any pay slips issued to Ms. Jones by any of the Operator Parties or their affiliates;

      e.  any correspondence (including hard copy and electronic communications) passing between Ms. Jones on the one side and any or all of the Operator Parties (or their affiliates) or any of their officer(s) and/or director(s), including, but not limited to, BVI Additional Defendants and/or Messrs. De Lacy and/or Goggin;

      f.  any shareholders' agreement, voting rights agreement, side letter, or any other written expression of an agreement pertaining to Ms. Jones' holding of the Jones Shares (or any portion thereof); and

g.   an affidavit pursuant to the requirements of 34 PA. CODE § 131.69 certifying the documents produced as business records.

38.    The Attorney General also seeks an order from the Court granting the Attorney General leave to serve Ms. Jones with a subpoena _ad testificandum_, compelling Ms. Jones to testify by way of a sworn deposition employing remote means and technology regarding all matters relating to:

a.   any aspect, fact, or other thing arising out of or in any way connected with her employment at BV Airways, her ownership of the Jones Shares (or any potion thereof), and her directorship of BV Airways; and

b.   any aspect, fact, or other thing connected in any way or regarding Ms. Jones' communications and relationships with any of the Operator Parties, the BVI Additional Defendants, and/or Messrs. DeLacy, Goggin, and/or Hyman.

39.    The Attorney General requests the foregoing with the utmost regard for this Court.


October 7, 2021                    Respectfully submitted,

                                   _/s/ John G. Papianou_
                                   John G. Papianou
                                   Pa. Bar No. 88149

                                   _Attorney for the Applicant_

                                   MONTGOMERY MCCRACKEN WALKER & RHOADS LLP
                                   1735 Market St.
                                   Philadelphia, PA 19103
                                   (215) 772-7389
                                   jpapianou@mmwr.com

_/s/ Markus A. Stadler_
Markus A. Stadler
_Admission Pro Hac Vice Pending_

_Attorney for the Applicant_

MARTIN KENNEY & CO.
P. O. Box 4740
Road Town
Tortola VG1110
British Virgin Islands
(284) 494-2444
mstadler@mksolicitors.com

18